IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STATE FARM FIRE AND CASUALTY )     CIVIL NO. 11-00470 LEK-BMK
COMPANY, an Illinois )
Corporation, )
      )
      Plaintiff, )
      )
   vs. )
      )
SAMUEL JONG CHUNG, ET AL., )
      )
      Defendants. )
_____ )


**ORDER GRANTING PLAINTIFF STATE FARM FIRE AND
CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

On March 12, 2012, Plaintiff State Farm Fire and

Casualty Company ("State Farm") filed its Motion for Summary

Judgment ("Motion") and its separate and concise statement of

facts in support of the Motion ("Motion CSOF"). Defendants

Samuel Jong Chung and Linda Hyunkyong Chung ("Defendants" or "the

Chungs") failed to timely file their memorandum in opposition.[1]

The Court finds this matter suitable for disposition without a

_____

[1] On June 1, 2012 the Court issued an inclination to vacate
the hearing on the Motion and to consider the Motion as an
unopposed, non-hearing Motion ("Inclination"). [Dkt. no. 16.]
Defendants filed a document titled Objections to Motion for
Summary Judgment ("Objections") on June 26, 2012. [Dkt. no. 17.]
In an order dated June 27, 2012, the Court concluded that
Defendants did not present a good reason to continue the hearing
on the Motion or to grant Defendants an extension of time to file
their memorandum in opposition to the Motion. The Court
construed the Objections as a response to this Court's June 21,
2012 Inclination, and not as Defendants' memorandum in opposition
to the Motion. [Dkt. no. 18.]

hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  After careful consideration of the Motion and the relevant legal authority, State Farm's Motion is HEREBY GRANTED for the reasons set forth below.

**BACKGROUND**

**I.    Factual Background**

State Farm filed its Complaint for Declaratory Judgment ("Complaint") on August 1, 2011 against Defendants. Defendants entered into an agreement with Brian and Debra Bennett ("the Bennetts") for the sale of a residence in Honolulu, Oahu ("the Property") on June 25, 2009.  [Complaint at ¶ 9.]  On May 3, 2011, the Bennetts commenced an action in the Circuit Court of the First Circuit, State of Hawai`i, Brian E. Bennett & Debra S. Bennett v. Samuel Jong Hoon Chung & Linda HyunKong Chung, Civil No. 11-1-0882-05 ("the Underlying Action"), for claims allegedly arising out of the purchase and sale of the Property.  [Motion CSOF, Declaration of David R. Harada-Stone ("Harada-Stone Decl.") at ¶ 1.]

Each of the claims in the Underlying Action ("Bennett Complaint") alleges that Defendants failed to disclose material information about defects and other problems in the Property.

The Bennetts assert the following claims against Defendants: breach of contract ("Count I"); breach of implied covenant of good faith and fair dealing ("Count II"); fraud ("Count III"); intentional and negligent misrepresentation ("Count IV"); negligence ("Count V"); unjust enrichment ("Count VI"); unfair and deceptive trade practices ("Count VII"); and punitive damages ("Count VIII"). [Id. at ¶ 4.]

The Bennetts allege that, on or about May 3, 2009, Defendants completed a Sellers' Disclosure Statement in connection with the sale of the Property. According to the Bennett Complaint, Defendants failed to fully disclose current or past defects, malfunctions, and/or major repairs in the foundation and slab, interior walls and ceilings, settling, sliding, slippage, subsidence, and other soil problems, as well as drainage, water infiltration, seepage, flooding or other grading problems at the Property. [Id. at ¶ 2.]

The Bennetts allege that, after moving into the Property, they noticed that cracks on the walls had been filled with caulk or plastered over and that supporting posts had shifted and/or had lifted off their footings. The Bennetts further contend that Defendants had replaced cracked floor tiles but failed to disclose this and other repairs done to the Property in the Sellers' Disclosure Statement. [Id. at ¶ 3.]

At the time of the events alleged in the Underlying
Action, Defendants were the named insureds under a State Farm
Homeowners Policy, No. 51-BS-4370-3 (the "Homeowners Policy"),
insuring the Property with a relevant policy period from July 26,
2008 through July 26, 2009.[2]  [Id. at ¶ 5.]  Defendants were also
the named insureds under a State Farm Personal Liability Umbrella
Policy, No. 51-B0-7524-0 ("the Umbrella Policy," both
collectively, "the Policies") with a relevant policy period from
May 21, 2008 through May 21, 2009.[3]  [Id. at ¶ 7.]

In its Complaint, State Farm argues that the claims
asserted against Defendants in the Underlying Action are not for
"bodily injury" or "property damage" caused by a covered
occurrence and thus, are not covered in the Homeowners Policy.
[Complaint at ¶ 19.]  State Farm further alleges that one or more
of the exclusions in the Homeowners Policy precludes coverage.
[Id.]  These exclusions include:

> 1.   Coverage L and Coverage M do not apply to:
>
>    a.   bodily injury or property damage:
>
>       (1)   which is either expected or
>             intended by the insured; or
>
>       (2)   which is the result of willful and
>             malicious acts of the insured[.]

---

[2] The Homeowners Policy is attached to the Harada-Stone
Declaration as Exhibit 2.

[3] The Umbrella Policy is attached to the Harada-Stone
Declaration as Exhibit 3.

> . . . .
>
> 2.   Coverage L does not apply to:
>
> . . . .
>
>      b.   property damage to property currently
>           owned by any insured;
>
>      c.   property damage to property rented to,
>           occupied or used by or in the care of
>           any insured. . . .

[Harada-Stone Decl., Exh. 2 at 21-22 (emphases omitted).][4]

State Farm further alleges that the claims are not for a "loss" and thus are not covered under the Umbrella Policy. [Complaint at ¶ 20.]  Additionally, State Farm contends that coverage for the claims are precluded by one or more of the exclusions in the Umbrella Policy, such as:

>      14.  bodily injury or property damage which is:
>
>           a.   either expected or intended by the
>                insured; or
>
>           b.   the result of any willful and malicious
>                act of the insured;
>
> . . . .
>
>      17.  personal injury when the insured acts with
>           specific intent to cause any harm;
>
>      18.  property damage to:
>
>           a.   property owned by any insured on date of

---

[4] Each policy as a whole consists of numerous separate documents, and each policy is not consecutively paginated.  The page numbers in the citations to the Policies refer to the page numbers in the district court's electronic filing system.

loss; and

. . . .

19.    liability imposed on or assumed by any
       insured through any unwritten or written
       agreement[.]

[Harada-Stone Decl., Exh. 3 at 15 (emphases omitted).]

State Farm prays for the following relief: a binding declaration that it has no duty to defend and/or indemnify Defendants for the claims asserted against them in the Underlying Action or for any claims that may arise out of the subject matter of the Underlying Action; attorney's fees incurred in connection with the defense of Defendants in the Underlying Action; attorney's fees and costs incurred in the instant case; and such other relief as the Court may deem appropriate under the circumstances. [Complaint at pg. 10.]

## II.  **Motion**

In the instant Motion, State Farm moves for summary judgment on the grounds that the material facts relevant to the insurance coverage for which Defendants seek are not in dispute and State Farm is entitled, as a matter of law, to a ruling that it has no duty to defend or indemnify Defendants for the claims asserted against them in the Underlying Action.  Further, State Farm argues that the owned property exclusion and the intentional acts exclusion preclude coverage.  State Farm asserts that the claims for which Defendants seek coverage involve Defendants'

alleged failure to disclose defects in the Property they sold, and the claims are not for "property damage" caused by an "occurrence" within the meaning of the Policies.  [Mem. in Supp. of Motion at 1.]

### A.   The Homeowners Policy

The Homeowners Policy provides for defense and indemnification for covered claims for "damages because of bodily injury or property damage . . . caused by an occurrence[.]" [Harada-Stone Decl., Exh. 2 at 20 (emphases omitted).]  Bodily injury is "physical injury, sickness, or disease to a person[;]" property damage is "physical damage to or destruction of tangible property, including loss of use of this property[;]" and an occurrence is defined, in pertinent part, as an "accident" which results in bodily injury or property damage.  [Id. at 6-7.]  The Homeowners Policy excludes from coverage damages that any insured expected or intended; or which were the result of willful and malicious acts of the insured.  [Id. at 21.]

### B.   The Umbrella Policy

The Umbrella Policy states, in pertinent part: "[i]f a claim is made or suit is brought against an insured for damages because of a loss for which the insured is legally liable and to which this policy applies, we will pay on behalf of the insured the damages that exceed the retained limit."  [Harada-Stone Decl., Exh. 3 at 12 (emphases omitted).]  The Umbrella Policy

provides coverage for a "loss," which is defined as, *inter alia*, an "accident, including accidental exposure to conditions, which first results in bodily injury or property damage during the policy period." [Id. at 8 (emphases omitted).]  Further, the Umbrella Policy excludes from coverage, personal injury damages that any insured expected or intended, or which were the result of willful and malicious acts of the insured; or in which the insured acted with specific intent to cause harm.  [Id. at 15.] Additionally, the Umbrella Policy excludes from coverage property damage to "property owned by any insured on the date of loss" and "liability imposed on or assumed by any insured through any unwritten or written agreement." [Id. (emphases omitted).]

State Farm contends that "[u]nder the 'complaint allegation rule,' the duty to defend is determined at the time that the defense is tendered to the insurer or the insurer otherwise is on notice that a complaint has been filed against its insured." [Mem. in Supp. of Motion at 12 (citing Dairy Road Partners v. Island Insurance Co. Ltd., 92 Haw. 398, 413, 992 P.2d 93, 108 (2000); Commerce & Indus. Ins. Co. v. Bank of Hawai`i, 73 Haw. 322, 326, 832 P.2d 733, 735 (1992)).]  State Farm argues that the allegations in the underlying action dictate whether an insurer has a duty to defend the insured.  [Id.]  Further, State Farm argues that the Court must interpret the Policies according to the general rules of contract construction.  [Id. at 9.]

8

State Farm argues that Hawai`i courts focus solely on the factual allegations in the underlying complaint when determining whether a claim arises from a covered occurrence. [Id. at 14 (citing Dairy Road Partners, 92 Haw. at 417, 992 P.2d at 112).] State Farm contends that the allegations in the Underlying Action are premised exclusively upon Defendants' alleged misrepresentations in connection with the Sellers' Disclosure Statement and do not arise from an occurrence or accident as defined in the Policies. [Id. at 13-15.]

State Farm notes that it is well settled in the Ninth Circuit and in the Hawai`i state courts that a claim arising from an alleged breach of a contractual obligation does not constitute an occurrence within the meaning of a general liability insurance policy. [Id. at 14-15.] State Farm argues that this district court, as well as courts in other districts, have found that even claims involving "negligent" failures to disclose defects arising out of contractual relationships do not fall within the scope of coverage under occurrence policies. [Id. at 15, 20-23 (some citations omitted) (citing Burlington Ins. Co. v. Oceanic Design & Constr. Co., 383 F.3d 940 (9th Cir. 2004); State Farm Fire & Cas. Co. v. Ramos, CV 06-00661 HG/LEK, Order Granting Plaintiff's Motion for Summary Judgment, filed 9/7/07 (dkt. no. 25), at 16-17; Cincinnati Ins. Co. v. Anders, 789 N.E.2d 1094 (Ohio 2003); State Farm Fire & Cas. Co. v. Brewer, 914 F. Supp. 140, 142 (S.D.

9

Miss. 1996)).]

State Farm contends that the instant case is on point
with Safeco Insurance Co. of America v. Andrews, 915 F.2d 500
(9th Cir. 1990), where the alleged defects in the property arose
before the property changed hands and did not constitute
accidental property damage within the scope of liability
coverage.  [Id. at 22 (citing Andrews, 915 F.2d at 502.]
Moreover, State Farm argues that the Underlying Action does not
allege "property damage" as defined in the Policies because the
underlying allegations arose out of Defendants' alleged failure
to disclose conditions of the premises that predated the sale of
the Property.  [Id. at 26.]

State Farm notes that Hawai`i courts apply the Economic
Loss Rule, which "generally bars recovery in tort for defects or
deficiencies in a building or structure where such defects result
in damage only to the structure itself."  [Id. (some citations
omitted) (citing Ass'n of Apartment Owners of Newtown Meadows v.
S. Horita Contracting & Bldg. Supplies, Ltd., 115 Haw. 232, 167
P.3d 225 (Haw. 2007)).]  State Farm notes that Hawai`i courts
have yet to address whether the Economic Loss Rule applies in the
context of claims arising from the sale of residential real
estate.  State Farm, however, contends that courts of other
jurisdictions have held that the rule applies, and State Farm
argues that the application of the rule to residential sales is

entirely consistent with the rationale underlying the Hawai`i courts' application of the doctrine.  [Id. at 27-28.]

State Farm argues that the absence of any allegation of a covered occurrence or accident in the Underlying Action is sufficient to compel summary judgment in State Farm's favor; and in the instant case, coverage is also barred by the owned property exclusion and the intentional acts exclusion.  [Id. at 28.]  The Homeowners Policy excludes coverage for "property damage to property currently owned by any insured[.]"  [Harada-Stone Decl., Exh. 2 at 22 (emphases omitted).]  The Umbrella Policy excludes coverage for property damage "owned by any insured on the date of loss[.]"  [Harada-Stone Decl., Exh. 3 at 15 (emphases omitted).]  State Farm argues that, because the injury-causing occurrence preceded the date of the sale of the Property, the owned property exclusion is applicable and thus coverage is precluded.  [Mem. in Supp. of Motion at 30.]

State Farm further argues that, in both Policies, the intentional acts exclusion bars coverage for bodily injury or property damage either expected or intended by the insured.  [Id. at 30-31.]  State Farm notes that the Underlying Action alleges that Defendants intentionally concealed the defects and the Bennetts suffered economic loss as a result.  [Id.]  Lastly, State Farm contends that the Bennetts seek punitive damages against Defendants, however, under Hawai`i law, courts do not

construe insurance policies to include coverage for punitive damages, unless the policy specifically mentions punitive damages. [<u>Id.</u> at 31-32.]  In the instant case, neither policy specifically includes coverage for punitive damages. [<u>Id.</u> at 32.]

## DISCUSSION

### I.   Principles of Insurance Contract Interpretation

The Hawai`i Supreme Court has set forth the following principles applicable in the interpretation of insurance contracts:

> [I]nsurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.  As such, insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended.  Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.

> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation.  We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

Guajardo v. AIG Haw. Ins. Co., Inc., 118 Hawai`i 196, 201-02, 187 P.3d 580, 585-86 (2008) (alteration in Guajardo) (quoting Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i 398, 411-12, 992 P.2d 93, 106-07 (2000)).  The Hawai`i Supreme Court has also stated: "[t]he objectively reasonable expectations of [policyholders] and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.  These 'reasonable expectations' are derived from the insurance policy itself . . . ." Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins. Co., 117 Hawai`i 357, 368, 183 P.3d 734, 745 (2007) (citations and some quotation marks omitted) (some alterations in original).

Under the principles of general contract interpretation, "[a] contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning." Airgo, Inc. v. Horizon Cargo Transp. Inc., 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983).

> It is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous.  In fact, contractual terms should be interpreted according to their plain, ordinary meaning and accepted use in common speech.  The court should look no further than the four corners of the document to determine whether an ambiguity exists.  Consequently, the parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous.

State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i 315, 324, 978 P.2d 753, 762 (1999) (citations omitted).

## II.  **Whether State Farm Has a Duty to Defend**

The Motion seeks summary judgment on State Farm's claim for a declaratory judgment that it has no duty to defend or indemnify the Defendants in the Underlying Action based on the Policies.  "[T]he duties to defend and indemnify arise under the terms of the insurance policy, and it is through an interpretation of the terms of the policy that such duties are deemed to be owed."  Del Monte Fresh Produce, 117 Hawai`i at 369-70, 183 P.3d at 746-47 (citation omitted).  This district court has summarized the following relevant aspects of Hawai`i law regarding the duty to defend and the duty to indemnify:

> The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration); Crawley v. State Farm Mut. Auto. Ins. Co., 90 Haw. 478, 483, 979 P.2d 74, 79 (App. 1999).  The insurer has the burden of establishing the applicability of an exclusion.  See Sentinel, 76 Haw. at 297, 875 P.2d at 914.
>
> The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage. Sentinel, 76 Haw. at 287, 875 P.2d at 904; accord Haole v. State, 111 Haw. 144, 151, 140 P.3d 377,

14

384 (2006) ("if there is no potential for
indemnification, then no duty to defend will
arise").  However, when the pleadings fail to
allege any basis for recovery under an insurance
policy, the insurer has no duty to defend.
Pancakes of Hawaii, Inc. v. Pomare Props. Corp.,
85 Haw. 286, 291, 994 P.2d 83, 88 (Haw. Ct. App.
1997)).  In other words, for [the insurer] to have
no duty to defend, it must prove that it would be
impossible for a claim in the underlying lawsuit
to be covered by the policy.  See Tri-S Corp. v.
W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82,
97 (2006).

Estate of Rogers v. Am. Reliable Ins. Co., Civ. No. 10-00482

SOM/RLP, 2011 WL 2693355, at *4 (D. Hawai`i July 8, 2011).  The

Hawai`i Supreme Court has emphasized that the duty to defend

applies even if the possibility of coverage is "remote."  Tri-S

Corp., 110 Hawai`i at 488, 135 P.3d at 97.  Further, "[a]ll

doubts as to whether a duty to defend exists are resolved against

the insurer and in favor of the insured."  Id.

In addition:

"Hawaii adheres to the 'complaint allegation
rule.'"  Burlington, 383 F.3d at 944 (quoting
Pancakes of Hawaii, Inc. v. Pomare Props. Corp.,
85 Hawai`i 286, 291, 944 P.2d 83, 88 (App. 1997)).
Therefore, the duty to defend is limited to
situations where the underlying pleadings have
alleged a claim for relief which falls within the
terms for coverage of the insurance contract.  Id.
(emphasis added).  "'Where the pleadings fail to
allege any basis for recovery within the coverage
clause, the insurer has no obligation to defend.'"
Id. at 944-45 (quoting Hawaiian Holiday Macadamia
Nut Co., Inc. v. Indus. Indem. Co., 76 Hawai`i
166, 169, 872 P.2d 230, 233 (1994)).  In
determining whether the insurer owes a duty to
defend, a court may only consider extrinsic
evidence outside of the underlying pleadings if
"none of the facts on which [the party] relies

15

might be resolved differently in the underlying lawsuit." <u>Dairy Road</u>, 92 Hawai`i at 422, 992 P.2d at 117.

For a court to issue a declaration of law at summary judgment that the insurer has no duty to defend, the insurer has the burden of proving that there is "no genuine issue of material fact with respect to whether a *possibility* exist[s]" that the insured will incur liability for a claim covered by the policy. <u>Id.</u> at 412, 992 P.2d at 107 (emphasis in original). In other words, State Farm is required to prove that it would be impossible for the Davises to prevail against the Thompsons in the state court litigation on a claim covered by either the Homeowners Policy or the Umbrella Policy. <u>Id.</u> at 412-413, 992 P.2d 93.

<u>State Farm Fire & Cas. Co. v. Thompson</u>, Civ. No. 09-00530

ACK/LEK, 2010 WL 2017101, at *6 (D. Hawai`i May 20, 2010)

(emphases in original).

In the present case, the Homeowners Policy provides

coverage for "bodily injury" or "property damage" arising from an

"occurrence." The Homeowners Policy states, in relevant part:

COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1.  pay up to our limit of liability for the damages for which the insured is legally liable; and

2.  provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages,

16

> to effect settlement or satisfy a
> judgment resulting from the occurrence,
> equals our limit of liability.

[Harada-Stone Decl., Exh. 2 at 20 (emphases omitted).]

The Umbrella Policy states, in pertinent part: "[i]f a claim is made or suit is brought against an insured for damages because of a loss for which the insured is legally liable and to which this policy applies, we will pay on behalf of the insured the damages that exceed the retained limit." [Id., Exh. 3 at 12 (emphases omitted).]  The Umbrella Policy provides coverage for a "loss," which is defined as, *inter alia*, an "accident, including accidental exposure to conditions, which first results in bodily injury or property damage during the policy period." [Id. at 8 (emphases omitted).]

State Farm argues that the Underlying Action does not allege "bodily injury" or "property damage" caused by an "occurrence" within the meaning of the Policies.  The Underlying Action involves allegations including the following:

> 32.  After closing the sale and moving into
> the Property, the Bennetts noticed that some
> windows and doors failed to close properly,
> because their frames were not square or plumb.

> 33.  After closing the sale and moving into
> the Property, the Bennetts noticed cracks on the
> walls of the Property.

> 34.  Upon closer inspection, the Bennetts
> realized that many of the cracks were old, and had
> been filled with caulk or plastered over.

> 35.  After closing the sale and moving into

17

the Property, the Bennetts noticed that many floor tiles had been replaced.

36.  After closing the sale and moving into the Property, the Bennetts noticed that some of the posts that comprised the structural foundation had shifted, that some of the posts were compressed much more than others, some of which had lifted entirely off their footings, and supported no weight.

[Bennett Complaint at ¶¶ 32-36.]

In this case, the parties dispute whether the claims in the Underlying Action may have been triggered by an "accident" or "occurrence" that resulted in "bodily injury" or "property damage."  Thus, the Court will examine the Underlying Action and determine whether any of the claims triggered State Farm's duty to defend and State Farm's duty to indemnify.

III. **What Constitutes a Covered Occurrence Under the Policies**

The Court agrees with State Farm that none of the underlying claims are covered because claims that "arise in connection with an alleged breach of contract do not constitute an 'occurrence' or 'accident' within the meaning of a liability insurance policy."  [Mem. in Supp. of Motion at 14-15.]

A.   **Breach of Contract Claims**

Count I and Count II in the Underlying Action, breach of contract and breach of implied covenant of good faith and fair dealing, do not arise from an occurrence as defined in the Policies.  This district court has stated:

Courts in this district have repeatedly held that

18

claims which, "ar[i]se solely because of a contractual relationship," do not result in an occurrence that could be covered by the type of policies at issue here.  See [State Farm Fire & Cas. Co. v.] Scott, [Civ. No. 06-00119 SOM-BMK,] 2007 U.S. Dist. Lexis 8522, at *24 [(D. Haw. Jan. 24, 2007)]; Burlington, 383 F.3d at 948-49 (interpreting Hawai`i law); see also RLI Ins. Co. [v. Thompson, Civ. No. 09-00345 SOM/BMK], 2010 WL 1438925, at *8-9 [(D. Haw. Apr. 12, 2010)].

Thompson, 2010 WL 2017101, at *7 (some alterations in Thompson) (some citations omitted).

For the same reasons, this Court concludes that Count I and Count II arose out of the contractual relationship for the sale of Property between the Bennetts and Defendants, and therefore they do not result in covered occurrences as defined by the Policies.

**B.** **Claims That Require Intentional Conduct**

The Bennetts' claims for fraud, intentional misrepresentation, and unfair and deceptive trade practices allege that Defendants intentionally failed to disclose material defects in the Property and that the Bennetts reasonably relied on Defendants' representations to their detriment.  [Bennett Complaint at ¶¶ 57-68, 76-81.]  This district court has recognized that:

> "As any injury caused by [an] intentional act would be 'the expected or reasonably foreseeable result of the insured's own intentional acts or omissions,' the intentional non-disclosures alleged in these counts does not constitute an 'accident' and is thus not an 'occurrence' . . . under Hawaii insurance law."  State Farm Fire &

19

Cas. Co. v. Scott, Civ. No. 06-00119 SOM-BMK, 2007
U.S. Dist. Lexis 8255 at *18-19 (D. Haw. Jan. 24,
2007) (quoting Hawaiian Holiday Macadamia Nut.
Co., 76 Hawai`i at 170, 872 P.2d at 234); see also
RLI Ins. Co., 2010 WL 1438925 at *7. . . .

Thompson, 2010 WL 2017101, at *7 (alterations in Thompson) (some
citations omitted).

　　　　"'[I]n order for the insurer to owe a duty to defend or
indemnify, the injury cannot be the expected or reasonably
foreseeable result of the insured's own intentional acts or
omissions.'"  Scott, 2007 U.S. Dist. LEXIS 8255, at *18
(alteration in Scott) (quoting Hawaiian Holiday Macadamia Nut
Co., 76 Hawai`i at 170, 872 P.2d at 234).  In the present case,
these claims arose out of Defendants' alleged failure to disclose
material information about the Property to the Bennetts and thus
could be the expected or reasonably foreseeable result of the
insureds' own intentional acts or omissions.  The Court therefore
concludes that these claims are not covered by the Policies.

　　　C.　**Negligent Misrepresentation and Negligence Claims**

　　　　The Bennetts allege claims of negligent
misrepresentation and negligence against Defendants for failing
to disclose any current or past defects, malfunctions, and/or
major repairs done to the Property.  Further, the Bennetts allege
that Defendants made representations regarding the condition of
the Property with reckless disregard, or without due care as to
the truth or falsity of such representations.  [Bennett Complaint

20

at ¶¶ 63-72.]

The case at issue here is distinguishable from two key cases, Thompson and RLI Insurance, which both found that most of the claims in the underlying action did not arise from an occurrence covered by the policies but did find potential coverage for claims alleging negligence.  See Thompson, 2010 WL 2017101, at *9-10; RLI Ins., 2010 WL 1438925, at *9.

In Thomspon, the underlying complaint alleged claims for breach of contract, but additionally, alleged that Thompson negligently made repairs to his home, prior to selling the property, and that these repairs caused further damage after the sale.  The district court concluded that the underlying complaint alleged that Thompson's negligent conduct exacerbated existing property damage.  In addition, the district court noted that the underlying complaint potentially alleged an independent negligence claim against Thompson.  Thompson 2010 WL 2017101, at *10-11.

Unlike Thompson, the Underlying Action in the present case alleges negligent misrepresentation and negligence claims which stem exclusively from Defendants' failure to disclose defects in the course of the sale of the Property.  Thus, these claims arise solely out of the contractual relationship between the Bennetts and Defendants for the sale of the Property. Because these allegations arose out of the contract for the sale

of the Property, the Underlying Action does not allege a negligence claim independent of the sales contract.  Further, the Underlying Action alleges that, after moving into the Property, the Bennetts noticed cracks on the walls that had been filled or plastered over, supporting posts had shifted, and drainage problems.  The Bennetts, however, do not allege that there was any new damage to the Property after the sale.  [Motion CSOF at ¶¶ 2-3.]

     Additionally, the Ninth Circuit has held that alleged negligence and misrepresentation claims do not amount to an "occurrence" as covered by an insurance coverage policy.  See, e.g., Andrews, 915 F.2d at 502 (holding that "[t]he cause of the damage [to the property] was Andrews's alleged misrepresentations, which are not an 'occurrence' . . . under the terms of the policy.  There is, therefore, no potential for liability that arguably comes within the scope of the insurance coverage provided by Safeco.").  The Court finds that the Bennetts' claims for negligent misrepresentation and negligent failure to disclose defects made in connection with the sale of real estate arise out of Defendants' contractual obligations for the sale of Property and therefore do not arise from "occurrences" covered by the Policies.  Thus, the Court concludes that these claims are not covered by the Policies.

     D.   **Unjust Enrichment Claim**

Count VI in the Underlying Action alleges an unjust
enrichment claim against Defendants.  [Bennett Complaint at
¶¶ 73-75.]

This district court has recognized that:

> To prevail on an unjust enrichment claim, a
> plaintiff must show that: 1) it has conferred a
> benefit upon the defendant, and 2) that the
> retention of the benefit was unjust.  <u>Wadsworth v.
> KSL Grant (sic) Wailea Resort, Inc.</u>, --- F. Supp.
> 2d ----, No. 08-00527, 2010 WL 5146521, at *11 (D.
> Haw. December 10, 2010).
>
> As a general rule, "[a]n action for unjust
> enrichment cannot lie in the face of an express
> contract."  <u>Porter v. Hu</u>, 169 P.3d 994 (Haw. App.
> 2007); <u>see also</u> <u>Goodwin v. Executive Trustee
> Servs., LLC</u>, 680 F. Supp. 2d 1244, 1255 (D. Nev.
> 2010) ("An action 'based on a theory of unjust
> enrichment is not available when there is an
> express, written contract, because no agreement
> can be implied when there is an express
> agreement.'" (quoting <u>Leasepartners Corp. v.
> Robert L. Brooks Trust Dated November 12, 1975</u>,
> 942 P.2d 182, 187 (Nev. 1997))); <u>MacDonald v.
> Hayner</u>, 715 P.2d 519, 522 (Wash. App. 1986) ("A
> party to a valid express contract is bound by the
> provisions of that contract, and may not disregard
> the same and bring an action on an implied
> contract relating to the same matter, in
> contravention of the express contract.") . . .

<u>Velasco v. Sec. Nat'l Mortg. Co.</u>, CV. No. 10-00239 DAE-KSC, 2011
WL 2117008, at *11 (D. Hawai`i May 24, 2011) (some alterations in
<u>Velasco</u>).

In the present case, the Bennetts allege a claim of
unjust enrichment against Defendants as an alternative claim to
the breach of contract claim.  Further, they allege that, after
moving into the Property, they noticed numerous defects such as

foundation shifting, cracked floor tiles, and moisture in the crawl space underneath the house.  [Bennett Complaint at ¶¶ 32-36.]  In addition, the Bennetts allege that they reported the issues to Defendants' broker in the sale of the Property, Myron Noboru Kiriu and The Real Estate Resource LLC ("RER").  [<u>Id.</u> at ¶¶ 9-11, 38-42.]  The Bennetts allege that Mr. Kiriu promised to disclose any material facts inconsistent with or contradictory to the Sellers' Disclosure Statement.  [<u>Id.</u> at ¶ 43.]

Despite the Bennetts' allegations that Mr. Kiriu and RER made express and implied representations, Mr. Kiriu and RER were acting as Defendants' agents in the sale of the Property, and this claim arises solely out of the express contract for the sale of the Property between the Bennetts and Defendants.  This Court therefore concludes that, because unjust enrichment is not available when there is an express, written contract, this claim is not covered by the Policies.

E.   **Punitive Damages Claim**

State Farm presents an argument that it is not responsible for punitive damages under Hawai`i Revised Statutes § 431:10-240, which provides that "[c]overage under any policy of insurance issued in this State shall not be construed to provide coverage for punitive or exemplary damages unless specifically included."  The Policies do not specifically include coverage for

24

punitive damages, therefore, State Farm will not be liable if the state court awards the Bennetts punitive damages in the Underlying Action.

## IV.  __Property Damage Within the Meaning of the Policy__

According to State Farm, the Bennetts allege that Defendants failed to disclose defects that predated the sale of the Property and, as such, the allegations do not constitute "property damage" within the meaning of the Policies.  [Mem. in Supp. of Motion at 6.]

This district court has recognized that:

> Even if the basis of the . . . claims--*i.e.,* the nondisclosure--did constitute an "accident" under the Policies, there would still be no coverage for the claims, because the nondisclosure did not result in any covered damage or injury. The Policies have a very specific definition of "property damage" that they cover. . . .

Scott, 2007 U.S. Dist. LEXIS 8255, at *26.

An occurrence is defined, in relevant part, as an "accident . . . which results in . . . property damage[.]" [Harada-Stone Decl., Exh. 2 at 7 (emphasis omitted).]  The Homeowners Policy defines property damage as "physical damage to or destruction of tangible property, including loss of use of this property."  [Id.]  The Umbrella Policy similarly defines property damage as "physical damage to or destruction of tangible property, including the loss of use of such property."  [Harada-Stone Decl., Exh. 3 at 9.]

25

The Court agrees that the present case is similar to

Scott, in which the district court found that the claims against

the insureds in the underlying action did not result in property

damage covered by the Policies.

> [T]he Kozials are claiming *economic loss* relating
> to the property's value and the Kozials' interest
> in the property.  Although the Kozials allege that
> the home did suffer water damage that made
> portions of the house uninhabitable, they do not
> assert that the Scotts' nondisclosure caused that
> water damage.  Further, because the Kozials are
> complaining that the Scotts failed to disclose the
> water damage after it occurred, the Kozials are
> alleging that the water damage occurred before the
> Scotts' nondisclosure.  Thus, the nondisclosure
> could not have caused the water damage.  The
> economic loss for which the Kozials are suing the
> Scotts is not covered by either Policy.
> Accordingly, even if the court construed the
> nondisclosure to be an "accident," the
> nondisclosure failed to cause any "property
> damage" covered by the Policies."

Scott, 2007 U.S. Dist. LEXIS 8255, at *32-33 (emphasis in

original).

In the instant action, the Bennetts are alleging that

Defendants failed to fully disclose material defects such as

shifting foundations, grading problems, and negligent repairs

made to the Property.  Further, the Bennetts allege that many of

the cracks on the walls of the Property were old and had been

concealed.  The conditions of the Property that Defendants

allegedly failed to disclose occurred prior to Defendants' sale

of the Property to the Bennetts.  Thus, because Defendants failed

to disclose material defects of the Property that predated the

sale, the nondisclosure does not constitute property damage covered under the Policies.

## V.    Applicability of Exclusions

Even assuming, *arguendo*, that the Bennetts' claims allege occurrences and property damage as defined in the Policies, State Farm contends that the relevant exclusions bar coverage.  [Mem. in Supp. of Motion at 28.]

### A.    Applicability of Owned Property Exclusion

The Homeowners Policy excludes coverage for "property damage to property currently owned by any insured[.]"  [Harada-Stone Decl., Exh. 2 at 22 (emphases omitted).]  In addition, the Umbrella Policy excludes coverage for property damage to "property owned by any insured on the date of loss[.]"  [Id., Exh. 3 at 15 (emphases omitted).]  State Farm argues that, because any property damage necessarily occurred prior to the sale of the Property and during Defendants' ownership, the exclusions apply.  This Court agrees.

Other courts have held that, in determining the applicability of the owned property exclusion, "the issue would best be resolved by determining when the 'exclusion-triggering event' occurred-before or after . . . the date upon which the Huntzingers formally transferred title in their property to Crossman."  See, e.g., Huntzinger v. Hastings Mut. Ins. Co., 143 F.3d 302, 309-10 (7th Cir. 1998) (footnote omitted).  "Simply

27

put, if the injury-causing 'occurrence' preceded [the date of the sale of the property], then the owned-property exclusion is applicable and there is no coverage." Id. at 314.  In the present case, the injury-causing occurrence - Defendants' alleged failure to disclose material defects - arose during Defendants' ownership of the Property, not after the sale.  This Court therefore concludes that the owned-property exclusion bars coverage for the claims in the Underlying Action.

> **B.    Applicability of Intentional Acts Exclusion**

In addition to the owned property exclusion, the Policies each contain an intentional acts exclusion which precludes coverage for "bodily injury" or "property damage" which is "either expected or intended by the insured[.]"  [Harada-Stone Decl., Exh. 2 at 21; Exh. 3 at 15 (emphases omitted).]  Although State Farm argues that the intentional acts exclusion precludes coverage in the instant case, in light of this Court's prior rulings, the Court need not reach the issue of whether or not the intentional acts exclusion precludes coverage.

**VI.   Summary of Coverage Rulings**

Defendants have not presented any evidence which indicates that there is a genuine issue of fact as to whether the claims in the Underlying Action are for "property damage" caused by "occurrences" within the meaning of the subject insurance Policies.  See Fed. R. Civ. P. 56(a) (stating that a party is

28

entitled to summary judgment "if the movant shows that there is
no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law").  The Court therefore
FINDS that the claims in the Underlying Action are not for
"property damage" caused by "occurrences" within the meaning of
the Homeowners Policy or for a "loss" within the meaning of the
Umbrella Policy.  Further, the Court FINDS that, even assuming
*arguendo* that the claims in the Underlying Action are for
property damage caused by covered occurrences or for covered
losses, the owned-property exclusions bar coverage.  The Court,
therefore, CONCLUDES, as a matter of law, that the allegations in
the Underlying Action give rise to the possibility of coverage
and State Farm does not owe Defendants a duty to defend or a duty
to indemnify.

The Court emphasizes that State Farm's Motion fails to
address the claims in its Complaint for reimbursement of
attorney's fees and costs.  These claims therefore remain.

### CONCLUSION

On the basis of the foregoing, State Farm Fire's Motion
for Summary Judgment, filed March 12, 2012, is HEREBY GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 31, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**STATE FARM FIRE & CASUALTY COMPANY V. SAMUEL JUNG CHONG, ET AL;
CIVIL 11-00470 LEK-BMK; ORDER GRANTING PLAINTIFF STATE FARM FIRE
AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**